**ROBERT R. HENSSLER, JR.**
California Bar No. 216165
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467

Attorneys for Mr. Ortiz-Cota

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EMILIO ORTIZ-COTA,<br><br>　　　　Defendant. | Case No. 08CR1357-DMS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**INTRODUCTION**

　　　　The following statement of facts is based, in part, on the complaint filed in this case. Mr. Ortiz-Cota does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion hearings and trial. Mr. Ortiz-Cota reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

　　　　On April 6, 2008, at approximately 5:50 p.m., United States Border Patrol agents arrested Mr. Ortiz-Cota near the Calexico, California, Port of Entry. Mr. Ortiz-Cota was initially questioned without being given <u>Miranda</u> warnings. Subsequently, Mr. Ortiz-Cota was advised of his Administrative Rights and was questioned again without <u>Miranda</u> warnings. Then, at approximately 12:15 a.m., ***over six hours after his arrest***, Mr. Ortiz-Cota was advised that his Administrative Rights would no longer apply because he was being charged criminally. Mr. Ortiz-Cota was then advised of his <u>Miranda</u> rights and questioned for a third

1  time. When asked whether he was willing to answer questions without an attorney present Mr. Ortiz-Cota
2  stated, "no, I don't care," but, the agents interrogated him anyway.

### II.

### **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

Defendant moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1) The Defendant's Statements. The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. See also United States v. Bailleaux, 685 F.2d 1105, 1113-1114 (9th Cir. 1982).

(2) Arrest Reports, Notes and Dispatch Tapes. Defendant also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding the defendant's arrest and any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A), Fed. R. Crim. P. 16(a)(1)(B), and Brady v. Maryland, 373 U.S. 83 (1963). The government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(E), Fed. R. Crim. P. 26.2, and United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Preservation of rough notes is requested, whether or not the government deems them discoverable.

(3) <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The government must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

(5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of all alleged prior criminal convictions and law enforcement contacts, if any. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Any Proposed 404(b) Evidence</u>. To the extent that there is any such evidence, the government must produce evidence of prior similar acts under Fed. R. Evid. 404(b) and "shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. <u>See</u> <u>United States v. Vega</u>, 188 F. 3d 1150, 1154-1155 (9th Cir. 1999). The defendant requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(D).

(8) <u>Request for Preservation of Evidence</u>. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved.

(9) <u>Henthorn Material</u>. The defendant requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case, and produce to him any exculpatory information and impeachment material at least two weeks prior to trial and one week prior to the motion hearing. <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>see also</u> <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered

to personally conduct examination of records; appropriate government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord).  In addition, the defendant requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an in camera inspection.

(10) Tangible Objects.  The defendant requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E). **Specifically, defendant requests copies of his immigration file as well as any recordings of his alleged prior removal.**

(11) Expert Witnesses.  Defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief.  Fed. R. Crim. P. 16(a)(1)(G).  Defendant requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert.  See Kumho v. Carmichael Tire Co., 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

(12) Impeachment Evidence.  The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland, 373 U.S. 83 (1963); United States v. Strifler, 851 F.2d 1197, 1201-1202 (9th Cir. 1988); Thomas v. United States, 343 F.2d 49, 53-54 (9th Cir. 1965).

//
//

1   (13) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

   (14) <u>Evidence of Bias or Motive to Lie</u>. Defendant requests any evidence that any prospective Government witness is biased or prejudiced against Defendant, or has a motive to falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 57-58 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197, 1201-1202 (9th Cir. 1988).

   (15) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197, 1201-1202 (9th Cir. 1988).

   (16) <u>Witness Addresses</u>. The defendant requests the name and last known address of each prospective government witness. <u>See</u> <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense counsel has equal right to talk to witnesses). The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

   (17) <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

   (18) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert. <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982). This includes all statements by percipient witnesses.

   (19) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at trial to allow the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under

section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. See also United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Defendant requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays for defense counsel to properly use any Jencks statements and prepare for cross-examination.

(20) Giglio Information & Agreements Between the Government and Witnesses. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

(21) Agreements Between the Government and Witnesses. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(22) Informants and Cooperating Witnesses. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against the defendant. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(23) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

1       (24) <u>Personnel Records of Government Officers Involved in the Arrest</u>. Defendant requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Defendant. <u>See</u> <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

      (25) <u>Training of Relevant Law Enforcement Officers</u>. Defendant requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, DHS, Imperial Beach Sheriff's Department, etc.) to their employees regarding: (1) the informing of suspects of their Constitutional rights; (2) the questioning of suspects and witnesses.

      (26) <u>Residual Request</u>. The defendant intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. The defendant requests that the government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.

### **THE COURT MUST SUPPRESS MR. ORTIZ-COTA'S STATEMENTS UNDER THE FIFTH AMENDMENT**

**A.** *Miranda* **Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the government may <u>not</u> use statements, whether exculpatory or inculpatory, obtained during custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the accused to make any showing other than that the statements were taken while the accused was in custody and subject to interrogation. <u>Id.</u> at 476. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of her freedom of action in any significant way. <u>Id.</u> at 477; <u>see also</u> <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969). In <u>Stansbury v. California</u>, 511 U.S. 318 (1994), the Supreme Court stated that "the initial determination of custody depends on the objective circumstances of the interrogation,

not on the subjective views harbored by either the interrogating officers or the person being questioned." Id. at 323.

When it takes an accused's statement during custodial interrogation, a heavy burden rests on the government to demonstrate that the accused intelligently and voluntarily waived her privilege against self-incrimination. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143 F.3d at 536. The standard of proof for a waiver of constitutional rights is high. Miranda, 384 U.S. at 475; see also United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights) (citing Johnson v. Zerbst, 304 US 458, 464 (1938)). Finally, it should be noted that, since Miranda rests on a constitutional foundation, see Dickerson v. United States, 530 U.S. 428, 438 (2000), ***no law or local court rule relieves the government of its burden*** to prove that Mr. Ortiz-Cota voluntarily waived the Miranda protections. Miranda, 384 U.S. at 475.

The validity of the waiver depends upon the particular facts and circumstances of the case, and include the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 482 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Garibay, 143 F.3d at 536; United States v. Bernard S., 795 F.2d at 751 ("a valid waiver of Miranda rights depends upon the totality of the circumstances, including the background, experience and conduct of the accused"). In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary; and, (2) knowing and intelligent. Id. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment . . . ." Id. The knowledge prong mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)); accord Garibay, 143 F.3d at 436. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been

waived." Derrick at 820 (quoting Moran v. Burbine, 475 U.S. at 521) (emphasis in original) (citations omitted)).

Here, Mr. Ortiz-Cota was in custody when he was questioned. Unless and until it shows the agents properly administered the Miranda warnings and obtained a knowing and intelligent waiver from Mr. Ortiz-Cota, the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Mr. Ortiz-Cota's arrest. Miranda, 384 U.S. at 479.

Although under Miranda, Mr. Ortiz-Cota is not required to present any evidence on this matter, see Dickerson v. United States, 530 U.S. 428, 438 (2000), he refers the Court to Exhibit A to this motion, the Declaration of Robert R. Henssler Jr. As noted in Exhibit A, when asked whether he was willing to answer questions without an attorney present Mr. Ortiz-Cota stated, "no, I don't care," but, the agents interrogated him anyway. Mr. Ortiz-Cota's statement was an assertion of his Miranda rights and the agents should have immediately stopped questioning him. See Miranda, 384 U.S. at 475. Therefore, the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Mr. Ortiz-Cota's arrest. Miranda, 384 U.S. at 479.

And, even if his statement was ambiguous (it was not), Mr. Ortiz-Cota's statement "was unquestionably a response to [the agent's] Miranda warning and offer to begin interrogation." United States v. Rodriguez, 518 F.3d 1072, 1080 (9th Cir. 2008) ("Whatever it means, his statement either is such an assertion [of Miranda rights] or it is not.") (citation and quotations omitted). As such, "*[t]he interrogating officers were under a duty to clarify what [Mr. Ortiz-Cota] meant -- and if he meant he didn't want to talk, that right should have been 'scrupulously honored.'*" Id. (qouting Michigan v. Mosley, 423 U.S. 96, 104, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975)) (emphasis added). Thus, under Ninth Circuit law, even if Mr. Ortiz-Cota's statement was ambiguous the Court must suppress his statements "because his interrogator failed to clarify [his] wishes with respect to his Miranda warnings." Id

**B.     The Government Bears the Burden of Proving that Mr. Ortiz-Cota's Alleged Statements Were Made Voluntarily.**

Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case is deprived of due process of law if her conviction is founded upon an involuntary confession. Arizona v.
//

Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964).  The government bears the burden of proving that a confession is voluntary.  Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will was overborne in a particular case, this Court must consider the totality of the circumstances.  Schneckloth at 226; see also United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993).  A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence."  Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)); see also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

To meet its burden, the government must demonstrate that Mr. Ortiz-Cota's statement was ***not*** the result of either threats or promises made by the agents, but was made voluntarily.

**C.    This Court Must Conduct An Evidentiary Hearing.**

Accordingly, this Court must conduct an evidentiary hearing to determine whether the government can meet this burden and use Mr. Ortiz-Cota's statements against him.  18 U.S.C. § 3501.  Since "'suppression hearings are often as important as the trial itself,'" these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.  See United States v. Prieto-Villa, 910 F.2d 601, 609-10 (9th Cir. 1990) (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)).

Mr. Ortiz-Cota's statements were made as a result of the coercive tactics employed by the agents. Unless and until the government demonstrates that these statements were made voluntarily, the statements may ***not*** be used ***for any purpose*** at trial.

**IV.**

**THE COURT SHOULD DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY**

The indictment in the instant case was returned by the January 2007 grand jury.  That grand jury was instructed on January 11, 2007.  The instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this

district in several ways.[1] First, instructing grand jurors that their singular duty is to determine whether or not probable cause exists and that they have no right to decline to indict when the probable cause standard is satisfied. Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory evidence. These instructions compounded by the erroneous instructions and comments to prospective grand jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions. Therefore, the indictment should be dismissed.

## V.

## **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Ortiz-Cota and defense counsel have not received all the discovery in this case. As new information comes to light, the defense may find it necessary to file further motions. Specifically, defense counsel has not yet had the opportunity to view the A-file in this case. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from any further discovery.

## VI.

## **CONCLUSION**

For the reasons stated above, Mr. Ortiz-Cota respectfully requests that this Court grant the foregoing motions.

Respectfully Submitted,

/s/ *Robert R. Henssler, Jr.*

Dated: May 23, 2008

**ROBERT R. HENSSLER JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Ortiz-Cota

---

[1] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Ortiz-Cota-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Ortiz-Cota-Vargas II); United States v. Ortiz-Cota-Vargas, 367 F.3d 896 (9th Cir. 2004)(Ortiz-Cota-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam). If the Court or the government request further briefing on this issue, or the transcript from the grand jury proceedings, then it will be provided forthwith.